IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

ELIZABETH LEIGH ELLISON,                    Civ No. 05-6368-TC

    Plaintiff,                              OPINION AND ORDER

    v.

PROVIDENT LIFE AND ACCIDENT
INSURANCE COMPANY, A TENNESSEE
CORPORATION,

    Defendant.

---

COFFIN, Magistrate Judge:

    Plaintiff, Elizabeth Leigh Ellison, brings this breach of contract claim against defendant, Provident Life and Accident Insurance Company (Provident). Ellison's claim stems from Provident's denial of her claim for long-term disability (LTD) benefits. Provident moved for summary judgment, and the court heard oral argument on the motion on June 18, 2007. For reasons outlined below, the court denies Provident's motion for summary judgment.

1

## FACTUAL BACKGROUND

The parties are familiar with the factual background. Accordingly, the factual details will be set forth below only as they are relevant to the instant motion.

Ellison is insured under a LTD policy issued by Provident. On November 20, 2001, she filed a disability claim[1], alleging disability due to alcohol dependence, attention deficit disorder, depression, carpal tunnel syndrome, attention deficit hyperactivity disorder, learning disability, post traumatic stress syndrome, anxiety NOS, status post head trauma, dysthymia, and hypothyroidism. At the time of Ellison's disability, she was self-employed as a psychiatrist in private practice.

On November 1, 2001, Ellison was admitted to a treatment center, where she stayed for four months; she subsequently entered a "recovery residence" for an additional three months. Provident paid Ellison LTD benefits from May 1, 2001 through January 30, 2002. Provident advised Ellison that, if her disability continued beyond the end of December 2002, her attending physician would have to inform Provident what medical complications were preventing her recovery as planned. Provident notified Ellison that additional documents, such as medical records, could also be required.

///

---

[1] Ellison signed a disability claim on November 20, 2001. (Doc. 46, exh. 2 at 3.) A letter from a Provident Appeals Specialist, Teresa Ward, notes that Ellison filed a claim for disability commencing May 1, 2001. (Doc. 46, exh. 17.)

In the Spring of 2002, Ellison moved to North Carolina. She applied for a North Carolina medical license, and she applied for two psychiatry positions in North Carolina. As part of her job applications, Ellison represented that she could practice medicine once she obtained her North Carolina medical license. As well as seeking employment, Ellison evaluated and wrote prescriptions for a few people.[2]

By December 2002, Provident had not made a determination that Ellison could return to her previous employment. In support of benefits beyond the end of December 2002, Ellison provided Provident with medical updates from her then-physician, Dr. Dornblazer. The updates were from September 2002 through December 16, 2002. (Doc. 45, exh. 2 & Doc. 46, exh. 7.)

Provident had Dr. Bolinger review Ellison's medical records as part of its determination of whether she qualified for LTD benefits beyond December 2002. Dr. Bolinger opined that Ellison was not restricted from returning to her employment as a psychiatrist. On February 18, 2003, Provident informed Ellison of its decision to discontinue her LTD benefits.

In further support of continued LTD benefits, Ellison provided an evaluation report from the Amen Clinic for Behavioral Medicine,
///

---

[2] A review of the record reveals that Ellison wrote prescriptions to family members and a friend. As a result of the prescription writing, pled guilty to the misdemeanor crime of practicing medicine in North Carolina without a license, and she agreed not to seek license in North Carolina for five years after her conviction. (Doc. 46, exhs 18 & 19.)

1  Inc. and an April 2003 letter from Dr. Jim Dailey of the Rocky
2  Mountain Integrative Health Management.
3      Dr. Bolinger evaluated this additional information for
4  Provident and concluded that the additional information did not
5  support a disabling condition which would prevent Ellison from
6  practicing psychiatry.
7      Provident continued to deny Ellison's LTD benefits; Ellison
8  continued to seek review of Provident's decision and to provide
9  Provident with additional information.  Dr. Dominiak reviewed
10 Ellison's file for Provident and opined that Ellison's records did
11 not support her disability claim.  In December 2003, Provident sent
12 Ellison a letter informing her it was upholding its decision to
13 deny her LTD benefits.
14     In December 2003, Ellison filed an application to renew her
15 Oregon medical license.  On her application she self-reported that
16 she did not have any conditions which would impair her ability to
17 practice medicine; however, she also indicated her history of
18 substance abuse problems.
19     On February 10, 2004, Ellison submitted a letter to Oregon's
20 Medial Board of Examiners, self-reporting that she was capable of
21 functioning effectively as a psychiatrist.
22     In 2004, Provident received a letter from Dr. Brogan dated
23 February 24, 2004, which supported Ellison's effort to receive LTD
24 benefits.  Dr. Brogan opined that Ellison suffered from major
25 depressive disorder and had been unable to practice as a physician
26 ///

4 - OPINION AND ORDER                    4

since January 2003. In April 2004, Provident informed Ellison that it was upholding its previous denial of benefits.

Although Provident had a contractual right to examine Ellison, it never exercised this right.

## STANDARDS

On a motion for summary judgment pursuant to Rule 56(c), the court must accept the evidence of the non-moving party as true and draw all reasonable inferences of fact in favor of the non-moving party. <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 248 (1986). The moving party bears the burden of demonstrating that there exists no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. <u>Celotex Corp v. Catrett</u>, 477 U.S. 317, 323 (1986)(quoting Fed. R. Civ. P 56(c)). If the moving party meets its burden, the burden then shifts to the non-moving party to establish that a genuine issue as to any material fact does actually exist. <u>Matsushita Elec. Indus. Co. V. Zenith Radio Corp.</u>, 475 U.S. 574, 586 (1986). The party opposing summary judgment may not rest on conclusory allegations, but must set forth specific facts showing that there is a genuine issue of material fact. <u>Mosher v. Saalfeld</u>, 589 F.2d 438, 422 (9th Cir. 1978)(involving a pro se litigant); <u>see also</u> <u>Anderson</u>, 477 U.S. at 586 n. 11. When the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue of material fact for trial. <u>Matsushita</u>, 475 U.S. at 587.

///

5 - OPINION AND ORDER            5

## DISCUSSION

Provident argues that it is entitled to summary judgment because Ellison did not provide sufficient evidence to Provident, at the time that it made its decision to deny her LTD benefits, to establish that she was suffering from total disability.

In resolving Provident's summary judgment motion, the court must decide whether, viewing the evidence in a light most favorable to Ellison, there exists an issue of material fact about whether she was disabled under the terms of her LTD policy after December 31, 2002.

At the onset, the court notes that Ellison's claim involves a breach of contract claim under an individual policy and it is undisputed that this claim is not governed by ERISA. This is important as it means that the court is not bound by the evidence in the administrative record.

Provident argues that, despite ERISA not applying here, contract law dictates that the court cannot consider new evidence—evidence which was not submitted to Provident prior to its decision to deny benefits past December 2002, in deciding the instant motion. Provident specifically argues that the court must exclude three pieces of evidence which were offered by Ellison after December 2002 to establish that she was disabled: (1) Dr. Dornblazer's February 27, 2003 medical record; (2) declaration of Dr. Turco and; (3) medical reports from Dr. R. Scott Babe, Ellison's treating physician.

///

The court rejects Provident's argument that the court cannot consider the three above-mentioned pieces of evidence. First, the court has not found support for Provident's position in contract law. While paying lip service to the fact that this is not an ERISA case, Provident, in essence, wants the court to confine Ellison to the four corners of the "administrative record" which was before Provident. Such an approach obliterates the distinction between ERISA cases and insurance policy breach of contract cases. Furthermore, Dr. Turco's opinion of Ellison's disability is based on his evaluation of her offered proof of disability as well as on his personal examination of her. Ellison is entitled to offer evidence of opinions of what her submitted proof meant; to exclude Dr. Turco's opinion would result in allowing no opinion of what Ellison's evidence meant except Provident's.

Finally, the court will not exclude evidence of medical records from physicians Dr. Babe and Dr. Dornblazer, who personally examined and treated Ellison. Records from both physicians are the result of Ellison's ongoing treatment for her illnesses. Ellison is entitled to oppose this motion for summary judgment with evidence of the conclusions of physicians who examined her, especially since the examinations were part of routine treatment for her ongoing illnesses and relate back to her ongoing LTD claim. The court notes that Provident had a contractual right to have Ellison examined by their own physician prior to denying her disability claim (doc. 46, exh. 1 at 20.) but never exercised that right.

The interpretation of a provision in an insurance policy is a question of law, and the court's task is "'to ascertain the intention of the parties.'" Hoffman Construction Co. v. Fred S. James & Co., 313 Or. 464, 469, 836 P.2d 703 (1992) (internal citations omitted). The court must determine the intention of the parties based on the terms and conditions of the insurance policy. Id. If the policy does not define a term at issue, the court must look to the plain meaning of the term. Id. at 470, 836 P.2d at 703. If there is more than one plausible interpretation of the term's plain meaning, the court must scrutinize each interpretation in the light of the specific context in which the term is used in the policy and also in the broad context of the policy as a whole. Id. at 470-71, 836 P.2d 703.

Here, the policy states that an insured is totally disabled if "due to Injuries or Sickness you are not able to perform the substantial and material duties of Your Occupation." (Doc. 46, exh. 1 at 4.) "Your occupation" is defined as "the occupation (or occupations, if more than one) in which you are regularly engaged at the time you became disabled." (Id.) The parties agree, for purposes of this motion, that Ellison's occupation at the time of disability was a self-employed psychiatrist in private practice. Therefore, the policy language means that Ellison is totally disabled if she cannot perform the "substantial and material" duties of a self-employed psychiatrist in private practice.

///

///

The policy does not define "substantial and material duties." Thus, the court considers the plain meaning of "substantial" and "material." "Substantial" in terms of duties of one's occupation means "important, essential." <u>Webster's Tenth Collegiate Dictionary</u> 1174, (1996). "Material" duties means those which have "real importance or great consequences." <u>Id.</u> at 717. "Duty" means "obligatory tasks, conduct, service, or functions that arise from one's positions (in life or in a group)." <u>Id.</u> at 360.

Applying those plain meanings here, the court concludes that, under the plain language of the contract, "totally disabled" does not mean that an insured must be unable to perform <u>all</u> the substantial and material duties of her occupation. Instead, the court concludes that, in terms of the language of this contract, "totally disabled" means that Ellison is unable to perform the functions of a psychiatrist which are essential and of real importance and of great consequence.

The instant case is distinguishable from <u>Twilleager v. North America Acc. Ins. Co.</u>, 239 Or. 256, 260-61, 397 P.2d 193 (1964) in which the Oregon Supreme Court found that "total disability" meant inability to do all substantial and material acts necessary to the insured's occupation. In <u>Twilleager</u>, the policy language defined total disability as the inability to engage in "any and every kind of business or labor pertaining to...the insured's occupation." <u>Twilleager</u>, 239 Or. at 259, 397 P.2d 193. Here, the policy language states that Ellison must be unable to perform "the substantial and material duties of Your Occupation." (Doc. 46, exh. 1 at 4.)

9 - OPINION AND ORDER                    9

Applying the provision against the drafter, the court finds that to defeat summary judgment, Ellison need only show an issue of disputed material fact as to whether she provided evidence that she was unable to perform the functions of a psychiatrist which are essential and of real importance and of great consequence. Hoffman, 313 Or. at 470-71, 836 P.2d 703. To defeat summary judgment, Ellison must show a disputed issue of fact as to whether, after 2002, she was unable to perform tasks which are essential and of great importance and consequence to a self-employed psychiatrist in private practice.

Additionally, Ellison's LTD benefits policy requires her to provide proof of loss due to disability in order to receive and continue to receive LTD benefits:

> When your claim is for monthly payment for a continuing loss, you must give [Provident] written proof of loss within 90 days after the termination of the period for which [Provident] is liable. For any other loss, written proof must be given within 90 days after such loss.

(Doc. 46, exh. 1 at 19.) The purpose of a "proof of loss" is "'to afford the insurer an adequate opportunity for investigation, to prevent fraud and imposition upon it, and to enable it to form an intelligent estimate of its rights and liabilities before it is obliged to pay.'" Sutton v. Fire Insurance Exch., 265 Or. 322, 325, 509 P.2d 418 (1973)(quoting 14 Couch, Cyclopedia of Insurance Law § 49:373, p 15 (2d ed)).

In support of her claim for LTD benefits continuing after December 2002, Ellison submitted treatment notes from George Dornblazer, M.D. dated September 23, 2002 and October 21, 2002.

(Doc. 46, exh. 7.) She also submitted treatment records from Rocky Mountain Integrative Health (doc. 46, exh. 12) and medical records from the Amen Clinic. (Doc. 46, exh. 11 & 18.[3])

Dr. Dornblazer's treatment notes indicated that Ellison was, among other things, suffering from major depressive disorder, which was in partial remission, and alcohol dependance, which was in remission. Ellison remained on medications Effexor-XR and Adderall. (Doc. 46, exh. 7.) Records from Rocky Mountain Integrative Health Management indicated that Ellison should return to her psychiatrist for continuation of treatment for major depression, ADD, alcohol addiction, and post-traumatic stress disorder and strongly recommended diagnosis through brain imaging because Ellison had a long history of unsuccessful treatment with traditional therapies. (Doc. 46, exh. 12.) Records from the Amen clinic recommend that Ellison "should [not] practice psychiatry until symptoms are [abated]."[4] (Doc. 46, exh. 11 at 9.)

Even if the court considers only the three items that Ellison presented to Provident prior to the filing of this suit-Dr. Dornblazer's records from September and October 2002; records from Rocky Mountain Integrative Health Management and; records from the

---

[3] Exhibits 11 & 18 are identical.

[4] The sentence reads "I would not feel that Elizabeth should practice psychiatry until symptoms are related." Viewing the facts in a manner most favorable to Ellison, the non-moving party, and in the manner in which the sentence makes most sense, the court assumes that "related" is an error and the word actually meant was "abated."

11 - OPINION AND ORDER                11

Amen Clinic, the court finds that Ellison has presented a issue of disputed material fact as to whether she was entitled to benefits under her policy after December 2002. Provident had records stating that Ellison's illnesses were "only partially treated" and that traditional therapy had never helped her maintain recovery. (Doc. 46, exh. 7 at 1 & exh. 12.) More importantly, Provident had access to the Amen Clinic record which noted that Ellison should not practice her profession until her symptoms had abated. (Doc. 46, exh. 11 at 9.) At the very least, Ellison met her proof of loss by submitting this evidence; thus triggering Provident's obligation to exercise its contractual right to have Ellison examined to determine the extent of her disability. However, Provident did not exercise this right, instead choosing to reject Ellison's evidence without further investigation.

Additionally, Dr. Turco's declaration creates an issue of material fact as to whether Ellison is disabled under the policy language. After Dr. Turco reviewed Ellison's medical and criminal records and personally examined her, he opined that she was unable to perform the functions of a psychiatrist in private practice. (Doc. 53 at 6:3-6.) Specifically, Dr. Turco noted that Ellison has "exhibited very poor judgment. This is exactly what is at issue. Working as a physician requires excellent judgment, not just occasionally, but on an almost continuous basis." (Id. at 4:19-21.) He further noted that Ellison's self evaluating of her abilities was not reliable. (Id. at 6:24.)

///

Dr. Turco's opinion is contrary to the opinions of Provident's reviewers, who reviewed Ellison's medical record and concluded that her records did not support her disability claim; thus presenting a disputed issue of material fact for a jury to decide.

## CONCLUSION

Upon consideration of all the written materials and the oral argument, Provident's motion for summary judgment is denied. There is a genuine issue of material fact present in this action concerning whether Ellison is entitled to LTD benefits under the terms of her policy. Anderson, 477 U.S. at 248.

IT IS SO ORDERED.

Dated this 12t day of July, 2007.

_____
THOMAS M. COFFIN
United States Magistrate Judge